CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

APR 0 7 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DR. NAIYER IMAN, et al., | ) |
| | ) Civil Action No.: 7:08cv00567 |
| Plaintiffs, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JAMES HALL, et al., | ) By: Samuel G. Wilson |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiffs filed this action pursuant to the Securities Act of 1933 (15 U.S.C. §§ 77a - 77aa), the Exchange Act of 1934 (15 U.S.C. §§ 78a - 78oo), and the Interstate Land Sales Full Disclosure Act of 1968 (15 U.S.C. §§ 1701-1720) ("ILSFDA"), claiming that James Hall, an employee with StellarOne Bank, his wife Susan Hall, and StellarOne Bank defrauded them in their purchases of condominium units in a South Florida development project.[1] Under the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, Plaintiffs also claim that Defendants' conduct violated the Florida Deceptive and Unfair Trade Practices Act, and constituted common law fraud under Virginia law. Defendants have moved to dismiss the securities claims and state-law claims, and after submitting supplemental materials, have also moved for summary judgment on Plaintiffs' ILSFDA claims. The court dismisses the securities claims because the Complaint fails to allege facts that demonstrate the condominium purchases were securities, and also because the Complaint fails to plead these claims with the particularity that Federal Rule of Civil Procedure Rule 9(b) requires. The court grants Defendants summary judgment on Plaintiffs'

---

[1] Plaintiffs also originally filed suit against Pearson Outdoor Promotions, Inc., the developer of the condominium project, Wayne Pearson, its president, and Todd Woodruff, its vice president. Pursuant to Federal Rule of Civil Procedure 41(a)(2), all parties have agreed to voluntarily dismiss these Defendants from the lawsuit.

ILSFDA claims because the condominium development is exempt from the Act. The court declines to exercise jurisdiction over the remaining state law claims, and accordingly dismisses them.

I.

The allegations contained in Plaintiffs' Complaint are as follows:

Around November 2005, James Hall ("Hall"), Susan Hall, and StellarOne Bank devised a scheme to finance a condominium development project in Panama City, Florida. Hall approached creditworthy StellarOne bank customers and asked them to purchase condominium units by applying for non-recourse loans. Hall "represent[ed] that this was a sound investment, that no money would actually be required by any [of the Plaintiffs] and that the [Plaintiffs] would simply sign a credit application for a non-recourse loan and that the loans so funded would be used to pay off and prepare the condos for sale, and that [the Plaintiffs] would then realize a profit on the sale." (Compl. ¶ 18.)

Hall made several representations about the investment opportunity. He represented that "all costs and expenses would be satisfied out of non-recourse loans," the loans would be used to complete the condominium project "and would not go to the immediate profit of the developer or any other party, and "there was a ready market for these condos in the $900,000 price range." (Compl. ¶ 21.) In actuality, the Plaintiffs signed recourse loans that "exceeded the value of the condo property" and left Plaintiffs "personally liable for large deficiency judgments" (Compl. ¶ 18); James and Susan Hall profited from undisclosed commissions and kickbacks; and the actual value of the condominiums at the time of the investment was $550,000–about $200,000 less than the face value of the loans–and there was a "near certainty that the units would sell at a huge

2

loss." (Compl. ¶¶ 22, 23).

Although the complaint alleges that at the time of sale, the condominium units "were characterized as an investment opportunity" (Compl. ¶ 19), in each condominium purchase agreement the purchaser made the following representations to the seller:

(A) The subject condominium Unit has been purchased by the Purchaser for residential purposes and has not been offered and sold with an emphasis on the economic benefits to Purchaser to be derived from the managerial efforts of others.

(B) There has been no offering of participation in a rental pool arrangement (an arrangement under which Purchaser agrees to rent his Unit and to place the rents received therefrom in a common pool from which each owner can draw his proportionate share irrespective of the number of times his Unit is actually rented).

(C) There has been no offering of a rental or similar arrangement whereby Purchaser must hold his Unit available for rental for any period of the year, must use an exclusive rental agent, or is otherwise materially restricted in occupancy or rental of his Unit.

(D) The Purchaser may decide to rent, or not to rent, and may use the rental agent of his choice or no rental agent and may enter into a non-pooled rental arrangement with other owners, if other owners desire to enter into such an arrangement on terms that are mutually agreeable. However, there has been no representation made to the Purchaser that there will be other owners who desire to enter into such rental arrangements.

Plaintiffs brought suit in this court seeking damages and rescission of their condominium purchases and loan agreements. Plaintiffs claim that Defendants' conduct violated the Securities Act of 1933, the Exchange Act of 1934, and the ILSFDA. Plaintiffs also claim that Defendants' conduct violated the Florida Deceptive and Unfair Trade Practices Act and constituted common law fraud under Virginia law. Defendants have moved to dismiss the securities and state-law claims, and have moved for summary judgment on the ILSFDA claims.

3

## II.

Plaintiffs claim that because they purchased their condominium units for investment purposes, their purchases are securities as defined in the Securities Act and the Exchange Act, and therefore Defendants' misrepresentations during the sale of the condominium units violated Sections 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77*l*, and 77*o*) and Sections 10(b) and 20(a) of the Exchange Act of 1934 (15 U.S.C. §§ 78j(b), 78t(a)), as well as Rule 10b-5 (17 C.F.R. § 240.10b-5). Defendants argue the court should dismiss[2] these claims because the Complaint fails to allege facts demonstrating the condominium purchases were securities and also because the Complaint fails to allege enough facts to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. The court agrees with Defendants on both grounds, and will accordingly dismiss Plaintiffs' securities claims.

### A.

Defendants argue that because Plaintiffs have only alleged they purchased condominium units, they have purchased only real estate, not a security as defined in the Securities and Exchange Acts. Plaintiffs contend that because they made the purchases for investment purposes, the condominium units are "investment contracts." The court agrees with Defendants,

---

[2]Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for relief if it fails to state a claim upon which relief can be granted. To state a claim, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). When considering a Motion to Dismiss, the court construes all factual allegations in favor of the non-moving party. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). Although generally extrinsic evidence should not be considered when ruling on a motion to dismiss, the court may consider documents attached to Defendants' motion that are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." Am. Chiropractic Ass'n Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (internal quotations and citations omitted).

4

and accordingly dismisses Plaintiffs' securities claims.

The Securities Act of 1933, 15 U.S.C. § 77b(a)(1), and the Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), broadly define "security" to include "any note, stock, treasury stock, security future, bond, debenture, . . ., investment contract, . . ., or in general, any instrument commonly known as a 'security.'" In S.E.C. v. W. J. Howey, Co., the Supreme Court defined an "investment contract" as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. 293, 298-99 (1946). In Howey, Florida orange growers offered customers the chance to purchase rows of orange groves, and then contract with a service company to cultivate, harvest, and market the crops. The customers would then share in the resulting profits. Even though the customers were purchasing real estate, the Court held that the combination of a land sales contract, warranty deed, and service contract constituted an "investment contract" because "all the elements of a profit-seeking business venture are present here. The investors provide the capital and share in the earning and profits; the promoters manage, control and operate the enterprise." Id. at 300.

The Court applied the "investment contract" definition to real estate transactions in United Housing Foundation v. Forman, 421 U.S. 837 (1975). In Forman, a low-income housing cooperative project required its tenants to purchase "stock" in the company managing the housing. The "stock" was essentially "a recoverable deposit on an apartment:" the shares were nontransferable, could not be pledged or encumbered, descended only to a surviving spouse, and did not entitle the holder to voting rights. Id. at 842. The Court held that this arrangement was not a security. These shares were not stock as defined in the securities acts because they bore

5

none of the "characteristics traditionally associated with stock." Id. at 851. The arrangement was not an investment contract because "when a purchaser is motivated by a desire to use or consume the item purchased . . . the securities laws do not apply." Id. at 852-53.

Thus, "[u]nder the definition of 'investment contract' as developed . . . in Howey and Forman, the sale of a condominium generally would not involve an investment contract." Bender v. Cont'l Towers Ltd. P'ship, 632 F. Supp. 497, 500 (S.D.N.Y. 1986); see also Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007); Mosher v. Southridge Assocs., Inc., 552 F. Supp. 1226, 1230-31 (W.D. Penn. 1982); Johnson v. Nationwide Indus., Inc., 450 F. Supp. 948, 953-54 (N.D. Ill. 1978). District courts have further held that purchasing a condominium unit purely as an investment is not an investment contract because the purchasers are "simply drawn in by an expectation of appreciation in value" rather than an expectation of profits derived solely from a third party's efforts. Bender, 632 F. Supp. at 501 (quoting Johnson, 450 F. Supp. at 953); see also Garcia, 528 F. Supp. 2d at 1292. A seller or condominium developer can only marginally influence a condominium's value. Realistically, the unit's value "'will depend upon the general housing market, the status of the neighborhood and the availability of credit.' A piece of real estate, such as a condominium, has an inherent worth, a worth not solely dependent on the efforts of a promoter." Bender, 632 F. Supp. at 501 (quoting Grenader v. Spitz, 537 F.2d 612, 617 (2d Cir. 1976)).

However, a condominium sale could constitute an investment contract when the purchaser is offered both real estate and an expectation of profits. Forman, 421 U.S. at 853 n.17. According to the Securities and Exchange Commission, "the offer of real estate . . . without any collateral arrangements with the seller or others, does not involve the offer of a security." SEC

6

Release No. 33-5347, 38 Fed. Reg. 1735 (Jan. 18, 1973). Examples of collateral arrangements that might transform an ordinary condominium sale into an investment contract include offering the property with an emphasis on the economic benefits to be derived from renting out the unit (based on third party management efforts), offering a rental pool arrangement, or offering a similar arrangement that would restrict the purchaser's occupancy or rental of his unit (i.e. holding the unit available for rental for a certain part of the year or requiring that the purchaser use a particular rental agent). Id.

Applying these principles to the Complaint, the court concludes that Plaintiffs' Section 12(a)(2) and Section 10(b) claims must be dismissed because Plaintiffs fail to allege facts demonstrating that the condominium purchases were investment contracts. Plaintiffs allege their purchases were an "investment opportunity," and they allege these purchases are investment contracts because their "expectations of profits derived solely from the efforts of . . . [the condominium developer] and Hall." (Compl. ¶¶ 18, 29.) These allegations fall well short of characterizing their condominiums purchases as investment contracts. In short, Plaintiffs "were simply drawn in by an expectation of appreciation in value" that depended not on the efforts of Hall and the developer, but on the vagaries of the real estate market at the time Plaintiffs attempted to resell their condominiums. Johnson, 450 F. Supp. at 953 (concluding that a developer's efforts are "clearly not the kind of third-party effort[s] envisioned by the Court in Howey"). Nor do Plaintiffs allege any collateral arrangement; in fact, in their purchase agreements Plaintiffs represented that the condominiums were "for residential purposes" without any emphasis on economic benefits, there was "no offering of a rental pool arrangement," and there was no offering of any other arrangement requiring the purchasers to hold their

7

condominium available for rental for a certain part of the year. See Garcia, 528 F. Supp. 2d at 1292 (dismissing securities claims on similar facts where the condominium purchase agreement represented the purchase was for "personal use"). Accordingly, the court dismisses Plaintiffs' securities claims.[3]

**B.**

Defendants alternatively argue that Plaintiffs' securities claims should be dismissed because the Complaint does not allege the factual context surrounding Hall's misrepresentations with the particularity that Federal Rule of Civil Procedure 9(b) requires. The court agrees and dismisses Plaintiffs' securities claims on this alternative ground.

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . ." This rule requires a claimant to plead with particularity "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297, at 50 (2d ed. 1990)). Because the Fourth Circuit has held that Rule 9(b) applies to "allegations under the Securities Acts where those allegations sound in fraud," Cozzarelli v. Inspire Pharm., Inc., 549 F.3d 618, 629 (4th Cir. 2008), the court will analyze all of Plaintiffs' securities claims under the Rule 9(b)

---

[3]The Court also dismisses the remaining securities claims because Plaintiffs' claim under Section 15 of the Securities Act is derivative of their Section 12(a)(2) claim, and Plaintiffs' Section 20(a) claim under the Exchange Act is derivative of their Section 10(b) and Rule 10b-5 claim. Cozzarelli v. Inspire Pharm., Inc., 549 F.3d 618, 628, 630 (4th Cir. 2008).

8

standard.[4]

Here, Plaintiff's securities claims fail to state with particularity the circumstances constituting fraud because the complaint fails to specify the factual context concerning Hall's representations to the purchasers. The Complaint merely lists the representations that Hall allegedly made; it does not allege to whom he made those representations, let alone the time and place he made those representations. This incomplete pleading fails to satisfy Rule 9(b)'s particularity requirement, and the court accordingly dismisses Plaintiffs' securities claims.

## III.

Plaintiffs claim the condominium sales violated the ILSFDA because Defendants never filed a "statement of record" with the Department of Housing and Urban Development as required by 15 U.S.C. § 1703(a)(1)(A), Defendants never provided Plaintiffs with a "property report" prior to the condominium purchases as required by 15 U.S.C. § 1703(a)(1)(B), and Defendants' misrepresentations violated the Act's anti-fraud provisions contained in 15 U.S.C. § 1703(a)(2)(A)-(C). However, Defendants argue that the condominium development was exempt from the act because it contained less than twenty-five units. Defendants therefore argue

---

[4] The court is aware that the Private Securities Litigation Reform Act of 1995 ("PSLRA") governs Plaintiffs' claim under Section 10(b) of the Exchange Act and Rule 10b-5. Prior to enactment of the PSLRA, the heightened pleading standard in Federal Rule of Civil Procedure 9(b) governed securities fraud claims. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007). "The PSLRA codifies the pleading requirements of Rule 9(b) and imposes even more stringent standards" especially in regard to alleging false statements and scienter. In re Trex Co., Inc. Sec. Litigation, 212 F. Supp. 2d 596, 604 (W.D. Va. 2002). However, the court need not analyze Plaintiffs' Complaint under the PSLRA standards because it concludes that the complaint has failed to meet Rule 9(b)'s particularity requirement.

9

summary judgment is appropriate for these claims.[5] The court agrees, and accordingly grants Defendants summary judgment on Plaintiffs' ILSFDA claims.

Congress enacted the ILSFDA "to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing." Winter v. Hollingsworth Props., Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). The act is an "antifraud statute utilizing disclosure as its primary tool, much like the securities laws," id.; see also Kemp v. Peterson, 940 F.2d 110, 112 & n.1 (4th Cir. 1991), but it exempts "the sale or lease of lots in a subdivision containing less than twenty-five lots." 15 U.S.C. § 1702(a)(1). "Selling a condominium unit falls within the definition of selling a 'lot' within the meaning of the ILSFDA." Harvey v. Lake Buena Vista Resort, LLC, 568 F. Supp. 2d 1354, 1358 (M.D. Fla. 2008).

In this case, Defendants submitted the uncontested affidavit of Wayne Pearson stating that the condominium development contained three buildings with four condominiums in each building, for a total of twelve condominiums. (Pearson Aff. ¶¶ 3, 4.) Therefore, the

---

[5]In its Motion to Dismiss, StellarOne Bank specifically "direct[ed] the Court to the [attached] affidavit of Wayne Pearson, and request[ed] that this Motion to Dismiss be converted to a Motion for Summary Judgment." (StellarOne Mem. Supp. Mot. to Dismiss 10.) James and Susan Hall joined in this request. (James Hall Mem. Supp. Mot. to Dismiss 1; Susan Hall Mem. Supp. Mot. to Dismiss 8.)

If "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) Motion to Dismiss, the court must convert the Motion to Dismiss into a Motion for Summary Judgment and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Given that the Defendants requested summary judgment on Plaintiffs' ILSFDA claims, the court finds that all parties received a reasonable opportunity to present all pertinent material. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (finding that because the caption of a Motion to Dismiss was alternatively titled as a Motion for Summary Judgment, the plaintiff "was on notice that this motion might be treated as one for summary judgment.").

10

condominium purchases are exempt from the ILSFDA because the condominiums were part of a subdivision containing less than twenty-five lots. Accordingly, the court grants Defendants summary judgment on Plaintiffs' ILSFDA claims.

## IV.

Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims when "the district court has dismissed all claims over which it has original jurisdiction." Accordingly, the court declines to exercise supplemental jurisdiction over Plaintiffs' Florida Deceptive and Unfair Trade Practices claim, and Plaintiffs' claim for common law fraud under Virginia law.

## V.

For the foregoing reasons, the court **GRANTS** Defendants summary judgment on Plaintiffs' ILSFDA claims and **DISMISSES** the remaining claims.

**Enter**: This 7th day of April, 2009.

UNITED STATES DISTRICT JUDGE